IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

|  |  |
|---|---|
| JOHN DOE, | : |
| Plaintiff, | : Civil Action No:3:17-cv-298 |
| v. | : |
| UNIVERSITY OF NOTRE DAME, | : |
| Defendant. | : |

**MEMORANDUM OF LAW IN SUPPORT OF
UNOPPOSED MOTION FOR PERMISSION TO PROCEED
UNDER A PSEUDONYM**

**I.      INTRODUCTION**

Plaintiff John Doe ("John"), by his undersigned attorneys, submits this Memorandum of Law in Support of his Motion for Permission to Proceed Under a Pseudonym ("Motion").[1] John, a student in his senior year at Defendant University of Notre Dame ("the University"), who was scheduled to graduate just three weeks from now, files this Motion to proceed under a fictitious name in his Complaint and all other filings in the case in order to maintain and protect his privacy and reputational interests as he seeks redress against the University for its mishandling of false allegations of sexual misconduct and harassment brought against him by his ex-girlfriend, a female undergraduate student at the University. John also seeks to maintain her privacy by referring to her as "Jane Roe." All of John's causes of action – which include violations of Title III of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, Title IX of the Education Amendments of 1972, and state law claims – arise from the University's conduct in

---

[1] Undersigned counsel has conferred with Defendant University of Notre Dame and confirmed that the University does not oppose the relief sought in this motion.

the course of a confidential disciplinary investigation and adjudication proceeding, and involve highly sensitive, personal matters, including John and Jane Roe's turbulent personal and sexual relationship, her allegations of sexual misconduct and sexual harassment, John's psychiatric history, periods of depression and suicidal ideation, and confidential therapy treatment through the University's counseling center.  In bringing this suit, John seeks to clear his name and enjoin the University from enforcing its sanction of his immediate separation from the University and withdrawal of his degree.  Inclusion of John's name in the Complaint and court filings would result in the public association of his name with the University's erroneous finding of sexual misconduct and sexual harassment, and would unnecessarily reveal his private psychiatric issues and treatment, thereby defeating the very purpose of his suit and causing the reputational and discriminatory harm that the suit seeks to prevent.  If he is forced to reveal his identity in the Complaint, it is more likely that Jane Roe's identity would also become public knowledge.  The University is fully aware of the actual identities of John and Jane Roe and, as explained below, will not be prejudiced in any way by John's use of these pseudonyms for the filings in the case – all of which will be publicly available.

## II.     FACTUAL BACKGROUND

The facts underlying this lawsuit are set forth in detail in John's Complaint (filed contemporaneously with this Motion), and will not be repeated here.  To summarize briefly, John filed this action for declaratory and injunctive relief and for damages arising out of the unlawful conduct of the University and its agents that resulted in his immediate one-year suspension and removal from the University, just three weeks before he was scheduled to graduate, with no guarantee that he will be readmitted after the one-year suspension and no guarantee he will ever obtain his degree.  This excessive, punitive sanction was the result of a biased, discriminatory

disciplinary process that wrongly found John responsible for sexual misconduct, and sexual and discriminatory harassment. (Compl. ¶¶ 1-10).

The University did this to John in response to a vindictive Title IX proceeding instigated by John's ex-girlfriend, Jane Roe, on the basis that she believed John's repeated attempts to reach out to her for support during a difficult moment in his life when he was experiencing episodic depression including suicidal ideation constituted sexual misconduct and sexual harassment. (Compl. ¶ 1). Once the University learned that John had never once threatened Jane Roe, and that John in fact was in danger of harming himself, its primary concern should have been to stabilize and protect John at the same time that it took steps to assist Jane Roe. In fact, the University was obligated under the Americans with Disabilities Act and by official guidance from the Department of Education's Office for Civil Rights to take certain affirmative steps to protect John. It did not. Instead, the University unleashed its prosecutorial Title IX apparatus, labeled John's conduct "other sexual misconduct" and "sexual harassment," and thrust him into a disciplinary proceeding that placed his entire academic career on trial at the very moment he was struggling with thoughts of suicide and depression. The University's investigation, hearing and appeal procedures were rife with procedural flaws, lack of due process and inherent gender bias, designed to ensure that male students accused of any type of sexual misconduct or sexual harassment – concepts that do not apply to John's conduct – are found responsible. (Compl. ¶ 2).

The University's decision is particularly harsh and unnecessary given that both John and Jane Roe have been attending the University for months since she made her complaint, and have had only minimal incidental contact since the moment she made her complaint in November of last year. There has been no recurrence of any conduct that formed the basis of Jane's

complaint, and no reason to believe that there will be.  Given John's progress with counseling, confirmed by a University psychologist, it is clear that allowing John to remain a student for the few days necessary to complete his coursework and take final exams presents no danger to anyone.  Indeed, the timing of the University's sanction given John's status as a graduating senior demonstrates that the University's decision is purely punitive and motivated by gender bias as opposed to being driven by concern for the safety and needs of its students.  The only result from the imposition of the University's punitive sanction will be to harm John's future economic prospects, and to destroy his reputation. (Compl. ¶ 9).

### III.     ARGUMENT

This Court should grant John's Motion in order to prevent the unnecessary disclosure of his identity and the identity of Jane Roe.  Maintaining the confidentiality of their identities will protect their privacy and reputational interests, guard against the imposition of additional damages, and will not disadvantage the University in any way.

#### A.     General Principles Governing Pseudonymous Filings

Although Fed. R. Civ. P. 10(a) requires that a complaint name all parties, federal courts in this Circuit permit the use of pseudonyms when the potential harm to the party requesting anonymity outweighs the possible prejudice to the opposing party.  Under well-settled precedent in this Circuit, 'the presumption that parties' identities are public information, and the possible prejudice to the opposing party from concealment, can be rebutted by showing that the harm to the [party requesting anonymity] … exceeds the likely harm from concealment." *Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004); *see also Doe v. Elmbrook Sch. Dist.*, 658 F.3d 710, 721 (7th Cir. 2011) (citing *City of Chicago*), *aff'd en banc in relevant part*, 687 F.3d 840, 842-43 (7th Cir. 2012).  The decision whether to permit parties to proceed anonymously is "left within the discretion of the district court." *Elmbrook Sch. Dist*., 658 F.3d at 721.

District courts permit a party to proceed anonymously "where the party has a privacy right so substantial as to outweigh the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.'" *Doe v. Indiana Black Expo*, *Inc*., 923 F. Supp. 137, 139 (S.D. Ind. 1996), quoting *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992). "Courts dealing with requests to proceed under fictitious names have avoided trying to articulate any mechanical legal test." *Id*. Because "[t]here is no simple formula" for determining when to allow the use of pseudonyms, the courts have identified "a number of factors that should be considered to determine whether a plaintiff's interest in privacy is so significant as to outweigh the strong presumption favoring public identification of litigants." *Id*. at 139-40.

These include the following non-exclusive factors: "(1) whether the plaintiff is challenging governmental activity; (2) whether the plaintiff would be required to disclose information of the utmost intimacy; (3) whether the plaintiff would be compelled to admit his or her intention to engage in illegal conduct, thereby risking criminal prosecution; (4) whether the plaintiff would risk suffering injury if identified; (5) whether the party defending against a suit brought under a pseudonym would be prejudiced; (6) the public interest in guaranteeing open access to proceedings without denying litigants access to the justice system." *Doe v. City of Indianapoli*s, No. 1:12-cv-0062-TWP-MJD, 2012 U.S. Dist. LEXIS 24686, at *3 (S.D. Ind. Feb. 27, 2012); *see also Indiana Black Expo*, 923 F. Supp. at 140 (applying nearly identical five-factor test). "[A] judge presented with a request to proceed under a fictitious name should carefully review *all* the circumstances of a given case and then decide 'whether the customary

5

practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns.'" *Id*., citing *Frank*, 951 F.2d at 323.[2]

Factors recognized by other courts may be considered in ruling on John's pseudonym motion here. For example, in *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185 (2d Cir. 2008), the Second Circuit set forth a non-exhaustive list of factors to conduct this analysis that closely mirror the factors articulated in *Indiana Black Expo*:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature;
>
> (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties;
>
> (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity;
>
> (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age;
>
> (5) whether the suit is challenging the actions of the government or that of private parties;
>
> (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;
>
> (7) whether the plaintiff's identity has thus far been kept confidential;
>
> (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity;

---

[2] In addition, the Seventh Circuit has specifically endorsed the use of fictitious names for certain categories of litigants, including children, rape victims, and "other particularly vulnerable parties or witnesses." *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 872 (7th Cir. 1997).

>   (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and
>
>   (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id.* at 190 (internal citations and quotation marks omitted); *see also Elmbrook Sch. Dist.*, 658 F.3d at 724 (citing with approval *Sealed Plaintiff's* "balancing inquiry").

### B. The Factors Used to Determine Whether to Permit Filing Under a Fictitious Name Heavily Weigh in John's Favor

The factors set forth above when viewed in totality strongly counsel in favor of permitting John to use pseudonyms in this case.[3] John, along with the female complainant in the underlying disciplinary proceeding, has a substantial privacy right that outweighs the public's interest in access to identities of litigants and the customary presumption of openness in judicial proceedings. Prosecution of this lawsuit will compel the disclosure of intimate, highly personal information in the form of explicit details of John's and Jane Roe's sexual activities. Because this case seeks redress for the University's mishandling of sexual misconduct and sexual harassment allegations against John, he has a reasonable fear that he will suffer retaliation, social stigmatization and reputational harm if he is denied the opportunity to pursue this action without a pseudonym. There is no risk of prejudice to the University. The University knows the true identities of John and Jane Roe, and all of John's filings in the case will be publicly available. Only his name and that of Jane Roe will be shielded from public disclosure. Indeed, permitting John to use these pseudonyms will further the University's interest in maintaining the confidentiality of its disciplinary proceedings, particularly in the context of investigations into

---

[3] With respect to the *City of Indianapolis* factors, the first and third factors are not applicable to this case, as John is not challenging governmental activity and he will not be compelled to admit an intention to engage in illegal conduct. As detailed below, all of the other *City of Indianapolis* factors apply to this case and weigh in favor of allowing John to proceed anonymously.

charges of sexual misconduct, like those leveled against John in the underlying proceeding. Although the public has a legitimate interest in the *legal issues* John raises in his Complaint, including issues of fairness, discrimination based on disability and gender, and contractual obligations owed by colleges to accused students in disciplinary proceedings involving sexual misconduct allegations, the actual identities of the individuals are of minimal importance to the public. John is not a public figure and has maintained the confidentiality of his identity. He has revealed information about the student disciplinary proceeding to which he was subjected only to a small inner circle of persons with a need to know, including family, attorneys, and his treating therapist. Finally, and perhaps most importantly, if the Court denies John's Motion, John will suffer the very harm that he is seeking to undo with the filing of his Complaint. Public disclosure may serve not only as a deterrent to John, but also to other wrongly accused students seeking redress through the only avenue available to them – the courts.

John addresses these factors below.

**First**, this litigation will require disclosure of information of the "utmost intimacy," including highly sensitive, personal information concerning John and Jane Roe's sexual relationship, Jane Roe's allegations of sexual misconduct and sexual harassment, the University's confidential sexual misconduct investigation and adjudication, and John's episodes of depression and suicidal ideation (which Jane Roe claimed were intended to harass and coerce her into sexual activity), and John's therapeutic treatment and recovery.

Courts across the country have allowed student-plaintiffs who have brought claims against colleges and universities stemming from investigations of sexual misconduct to proceed anonymously, and a substantial number of colleges and universities have recognized this substantial privacy right by not opposing student-plaintiffs' motion to proceed anonymously.

*See*, *e.g.*, *Doe v. Columbia Univ.*, 101 F. Supp. 3d 356, 360 n.1 (S.D.N.Y. 2015) ("Columbia consented to Plaintiff's request to proceed pseudonymously in light of the sensitive subject matter and the age of the students involved."); *Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 764 (E.D. Tenn. 2009) (upholding the magistrate's order granting motion to proceed under pseudonym in a case where plaintiff, a college male, was found responsible for sexually assaulting a female classmate); *Doe v. Colgate Univ.*, No. 5:15-cv-1069 (LEK/DEP), 2016 U.S. Dist. LEXIS 48787, at *5 (N.D.N.Y. Apr. 12, 2016) (holding that student bringing suit against his university challenging its investigation and finding of sexual misconduct can proceed anonymously after balancing all pseudonym factors); *Doe v. Brandeis*, No. 1:15-cv-11557-FDS (D. Mass. June 17, 2015) (permitting use of pseudonym after weighing factors because student-plaintiff could be subject to "social stigmatization" if his identity were disclosed in lawsuit against university which found him responsible for sexual misconduct); *Doe v. Swarthmore Coll.*, No. 2:14-cv-00532-SD (E.D. Pa. Jan. 29, 2014) (granting motion to proceed under pseudonym and finding the student-plaintiff's application of pseudonym factors to his case "compelling").[4]

---

[4] *See also Doe v. Trs. of Univ. of Pennsylvania*, 2:16-cv-05088-JP (E.D. Pa. Sept. 26, 2016) ECF Doc. No. 12 (granting motion for pseudonym, noting the plaintiff "has a legitimate fear or significant harm should the preliminary finding of his responsibility for a sexual assault be made public"); *Doe v. Alger*, 317 F.R.D. 37, at * 42 (W.D. Va. Mar. 31, 2016) (holding plaintiff's "privacy interest outweighs the presumption of the openness of judicial proceedings"); *Doe v. Washington & Lee Univ.*, No 6:14-cv-00052, 2015 U.S. Dist. LEXIS 102426 (W.D. Va. Aug. 5, 2015) (allowing plaintiff to proceed under pseudonym, with no indication on docket of opposition); *Doe v. Univ. of S. Fla. Bd. of Trs.*, No. 8:15-cv-682-T-30EAJ (M.D. Fla. May 29, 2015) (allowing plaintiff to proceed anonymously); *Doe v. Reed Institute*, No. 3:15-cv-617 (D. Or. Apr. 14, 2015) ECF Doc. No. 9 (granting plaintiff's unopposed motion to proceed under pseudonym); *Doe v. Washington & Lee Univ.*, No. 6:14-cv-00052-NKM-RSB (W.D. Va. Dec. 12, 2014) ECF Doc. No. 13 (noting an oral order granting plaintiff's motion to proceed under pseudonym); *Doe v. Univ. of Colo., Boulder*, No. 1:14-cv-03027-RM-MEH (D. Colo. Nov. 7, 2014) (proceeding pseudonymously throughout the case); *Doe v. Williams Coll.*, No. 1:13-cv-11740 (D. Mass. Sept. 5, 2013) ECF Doc. No. 12 (order granting accused student's motion to proceed pseudonymously and granting motion for protective order); *Doe v. George Washington Univ.*, No. 1:11-cv-00696-RLW (D.D.C. Apr. 8, 2011), ECF Doc. No. 2 (order granting accused student plaintiff's motion to proceed under pseudonym).

Accordingly, this factor weighs in favor of anonymity.

**Second**, John seeks to proceed using a pseudonym to minimize the reputational harm and social stigma attached to the University's finding of responsibility for sexual misconduct and abusive or harassing behavior. There is no question that being charged and found responsible for sexual misconduct by a prestigious educational institution bears a strong social stigma. *See, e.g., Doe v. Brandeis*, No. 15-11557-FDS, 2016 U.S. Dist. LEXIS 43499, at *93 (D. Mass. Mar. 31, 2016) (a "student who is found responsible for sexual misconduct will likely face substantial social and personal repercussions"); *Doe v. Rector & Visitors of George Mason Univ.*, 149 F. Supp. 3d 602, 613 (E.D. Va. 2016) (noting that a charge of sexual misconduct "plainly calls into question plaintiff's good name, reputation, honor, or integrity") (citation omitted).

**Third**, John could be subjected to retaliatory physical or mental harm should his name become public. The University is prohibited pursuant to federal law from disclosing John's identity and records related to his disciplinary proceeding to third parties without John's consent. *See* Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g (protecting the privacy interests of student education records). Further, the University conducts disciplinary proceedings involving sexual misconduct with the utmost confidentiality. These privacy protections are in place at least in part to avoid physical or emotional retaliation against students involved in such proceedings. Due to the confidentiality of the underlying disciplinary proceeding, John has not yet been subjected to retaliation. However, should John's name become public with respect to the underlying allegations of sexual misconduct – which include serious charges of dating violence, stalking, and abusive or harassing behavior – it is not unreasonable to believe that John could be subjected to retaliation.

**Fourth**, while John and Jane Roe are not "children," both are young college students. Their young age weighs in favor of permitting John and Jane Roe's identities to remain private. *See Doe v. Columbia Univ.*, 101 F. Supp. 3d 356, 360 n.1 (S.D.N.Y. 2015) ("Columbia consented to Plaintiff's request to proceed pseudonymously in light of the sensitive subject matter and the age of the students involved.")

**Fifth**, if John's identity becomes a matter of public record, the negative publicity it would bring to John would entirely defeat the purpose of the suit, which is to clear his good name and vindicate his rights. *See Doe v. Town of Madison*, No. 3:09-cv-2005 (JCH), 2010 U.S. Dist. LEXIS 31487, at *5-6 (D. Conn. Mar. 31, 2010) (granting plaintiff's motion to proceed anonymously in part because the injury litigated against would be incurred as a result of the disclosure of plaintiff's identity); *Doe v. Rostker*, 89 F.R.D. 158, 161-62 (N.D. Cal. 1981) (observing that a plaintiff may proceed pseudonymously if use of his or her name would "indelibly connect" the plaintiff to a "stigmatizing" characteristic, regardless of the outcome of the litigation). The "indelible connection" to a "stigmatizing characteristic" – here the University's decision finding John responsible for sexual misconduct – is precisely the reputational harm that John will suffer if required to use his actual name. In the age of the Internet and Google, John's name would be forever related to the University's finding of sexual misconduct, regardless of the ultimate outcome of this lawsuit. Additionally, if John's identity is made public, he will almost certainly be severely hampered in his future educational prospects and employment opportunities. *See, e.g., Brandeis.*, 2016 U.S. Dist. LEXIS 43499, at *93 ("A finding of responsibility for sexual misconduct can also have significant consequences off-campus. Post-graduate educational and employment opportunities may require disclosure of

disciplinary actions taken by a student's former educational institution.").[5] Under such circumstances, pseudonymous litigation is necessary and appropriate, and no other measure would accomplish such purpose.

**Sixth**, the University will not suffer any prejudice or be unfairly disadvantaged in defending this case if John proceeds anonymously. As previously noted with respect to the first factor, numerous federal courts have allowed student-plaintiffs, like John, to proceed under a pseudonym in cases against their colleges for alleged mishandling of sexual misconduct proceedings. Further, unlike other cases where prejudice to the defendant is a concern because the defendant did not know the plaintiff's identity, the University knows John's actual identity and will be entitled to the same full discovery just as if John was litigating under his own name. *See, e.g., Colgate*, 2016 U.S. Dist. LEXIS 48787, at *10 ("[T]he Court finds that the recent increase in media attention focused on the epidemic of sexual assaults on college campuses negates any resulting prejudice Defendants would incur if Plaintiff were allowed to proceed anonymously. Furthermore, Defendants are aware of Plaintiff's true identity and will have an uninhibited opportunity to litigate this matter regardless of whether Plaintiff's identity is disclosed publicly."); *Roe v. Aware Woman Ctr. For Choice, Inc.*, 253 F.3d 678, 687 (11th Cir. 2001) ("The only justification the defendants offer for stripping Roe of her privacy is the argument that they will not be able to adequately conduct discovery without knowing her true

---

[5] "In the context of academic discipline, the possibility that a disciplinary violation will interfere with later opportunities for higher education and employment is so clear as to almost be a truism. To be sure, plaintiff's disciplinary records are considered confidential under the Family Educational Rights and Privacy Act 20 U.S.C. § 1232g, but this information can be shared with plaintiff's authorization. Thus, if plaintiff seeks education or employment with institutions or organizations that require disclosure of such records, plaintiff's only options are to forgo opportunities with those institutions or organizations or to authorize the dissemination of records that would likely foreclose plaintiff's ability to pursue such opportunities because of the allegedly defamatory nature of the records." *George Mason Univ.*, 149 F. Supp. 3d at 614, n.9 (internal citations and quotations marks omitted).

identity. However, that argument is eviscerated by Roe's offer to disclose her name to the defendants for discovery purposes on condition that they do not disclose it to the general public."); *AF Holdings LLC v. Doe*, No. 12 C 4222, 2012 U.S. Dist. LEXIS 162487, at *8 (N.D. Ill. Nov. 13, 2012) (finding AF Holdings "will not be unfairly prejudiced because AF Holdings will know Movant's true identity and be able to prosecute its claims appropriately").

**Seventh**, John has taken scrupulous steps to keep his identity confidential. Other than witnesses John asked to testify on his behalf in the disciplinary proceeding, John has not disclosed his involvement in this matter beyond his parents, immediate family, and attorneys. Further, as previously noted with respect to the third factor, the University is prohibited pursuant to federal law from disclosing John's identity and records related to his disciplinary proceedings to third parties without John's consent, and its disciplinary proceedings involving allegations of sexual misconduct are conducted in private. *See* Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g (protecting the privacy interests of student education records).[6] Therefore, this factor weighs in John's favor.

**Eighth**, although there is a public interest in the *legal issues* raised in John's Complaint – and in similar complaints brought by an increasing number of accused students who have been forced (like John) to assert their rights in the courts against their colleges for wrongful student disciplinary actions – the public has little interest in knowing, and no compelling need to know, the actual identities of the student-litigants and their accusers. There is "an atypically weak public interest in knowing the litigants' identities" due to the "purely legal nature of the issues

---

[6] Notably, John's identity has *never* been publicly disclosed, unlike litigants in other cases. *See, e.g., Doe v. Bell Atl. Bus. Sys. Servs.*, 162 F.R.D. 418, 421-22 (D. Mass. 1995) (denying motion to proceed under pseudonym where plaintiff, an alleged rape victim filing an employment discrimination claim, had already been named in a related case and in publicly available administrative complaints).

presented …." *Doe v. Del Rio*, 241 F.R.D. 154, 157 (S.D.N.Y. 2006). Moreover, protecting John's identity will not "impede the public's ability to follow the proceedings." *Doe v. Evans*, 202 F.R.D. 173, 176 (E.D. Pa. 2001); *accord Doe v. Stegall*, 653 F.2d 180,185 (5th Cir. 1981) ("Party anonymity [will] not obstruct the public's view of the issues joined or the court's performance in resolving them."). John only seeks to protect his identity and the identity of his accuser. All filings submitted to the Court will be a matter of public record, and will be available for public review. *See Malibu Media, LLC v. Reynolds*, No. 12 C 6672, 2013 U.S. Dist. LEXIS 31228, at *20-21 (N.D. Ill. Mar. 7, 2013) (finding the harm to the public interest "is minimal" because plaintiff "does not request that the case move forward under seal, nor does he move for a blanket protective order …."); *City of Indianapolis*, 2012 U.S. Dist. LEXIS 24686, at *6 (finding "the public's interest in disclosure is weakened because Plaintiff's case presents a pure issue of law ….").

**Ninth**, John may be deterred from pursuing his case in court if the price he must pay is being publicly identified. There is no alternative mechanism outside of the Court's permission to proceed anonymously to protect John's confidentiality. Furthermore, if John is publicly identified, the University community and anyone loosely associated with the parties will have all the information necessary to quickly and easily ascertain the identity of Jane Roe. Maintaining the anonymity of John is imperative to maintaining the anonymity of all those involved in his case. The impact of this chilling effect may also deter other similarly-situated individuals – including those who have been falsely accused of sexual misconduct and unfairly adjudicated by their colleges and universities – who turn to the courts as their last best hope to vindicate their rights. Courts have determined that there is a substantial public interest in ensuring that cases

involving important issues like those in John's case are adjudicated without the risk of stigmatization. Therefore, this factor weighs in John's favor.

**Finally**, John notes that the Seventh Circuit has questioned in dictum whether sexual harassment claims, standing alone, raise sufficient privacy concerns to justify anonymity. *See Doe v. Vill. of Deerfield*, 819 F.3d 372, 377 (7th Cir. 2016). The Seventh Circuit has also disapproved in dictum the grant of pseudonym motions for claims involving medical and psychiatric information. *Id*. Those concerns are not applicable to John's case, which involves the University's finding of responsibility against John for serious charges of sexual misconduct as well as sexual harassment. John's claims with respect to his psychiatric information are directly linked to the sexual misconduct and sexual harassment charges in the underlying disciplinary proceeding, in that Jane Roe claimed that John's episodes of depression and suicidal ideation were intended to harass and coerce her into sexual activity with him. He seeks vindication in this Court for the University's mishandling of these false allegations. When considering all of the relevant factors, John's claims raise more than sufficient privacy concerns to justify proceeding anonymously. *See City of Indianapolis*, 2012 U.S. Dist. LEXIS 24686, at *4-7 (granting plaintiff's pseudonym motion in lawsuit seeking to challenge the Indiana sex offender registry, noting the case would require disclosure of information of the utmost intimacy, involved purely legal issues, and proceeding anonymously would not prejudice defendants because they would have access to plaintiff's personal information); *Doe v. Trs. of Ind. Univ*., No. 1:12-cv-1593-JMS-DKL, 2013 U.S. Dist. LEXIS 93174, at *12-15 (S.D. Ind. July 3, 2013) (granting pseudonym motion to plaintiff claiming insurance coverage for psychiatric treatment); *Doe v. Massac Unit Sch. Dist. #1*, No. 12-CV-268-MJR-DGW, 2012 U.S. Dist. LEXIS 65403, at *1-3 (S.D. Ill. May 10, 2012) (granting pseudonym motion in case involving alleged sexual

abuse and psychiatric harm caused by the abuse); *Doe v. Maywood Hous. Auth.*, No. 93 C 2865, 1994 U.S. Dist. LEXIS 13451, at *1-2 (N.D. Ill. Sept. 22, 1994) (permitting plaintiffs to proceed anonymously in sexual harassment case and issuing contempt order to defendant's attorney for disclosing plaintiffs' true names in answer to complaint).

**IV.    CONCLUSION**

For all of the foregoing reasons, Plaintiff's Motion for Permission to Proceed Under a Pseudonym should be granted.

Respectfully submitted,

/s/ Peter J. Agostino
Peter J. Agostino                           (#10765-71)
Stephanie L. Nemeth                   (#25721-71)
ANDERSON AGOSTINO & KELLER, P.C.
131 South Taylor Street
South Bend, IN 46601
Telephone:  (574) 288-1510
Facsimile: (574) 288-1650
Email: nemeth@aaklaw.com
Email: agostino@aaklaw.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused a true and correct copy of the foregoing pleading, to be served upon counsel for Defendant Notre Dame University listed below by email and U.S. First Class Mail on April 20, 2017:

| | |
|---|---|
| Matthew Lahey, Esq. | Damon R. Leichy, Esq. |
| Associate General Counsel | Barnes & Thornburg |
| University of Notre Dame | 700 1st Source Bank Center |
| 203L Main Building | 100 North Michigan |
| Notre Dame, IN 46556 | South Bend, IN 46601 |
| mlahey@nd.edu | Damon.leichty@btlaw.com |
| *Counsel for Defendant* | *Counsel for Defendant* |

           /s/ Peter J. Agostino
           Peter J. Agostino